## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO: 23-131** |
| **DEBORAH COOPER** | **SECTION "H"** |

## ORDER AND REASONS

Before the Court is Defendant Deborah Cooper's Motion to Dismiss (Doc. 84). For the following reasons, the Motion is **DENIED**.

## BACKGROUND

Defendant Deborah Cooper was indicted on six charges stemming from two armed robberies of Igor's Bar in New Orleans, Louisiana in February and March 2022, respectively. She is charged in Count 1 with Conspiracy to Interfere with Commerce by Robbery in violation of 18 U.S.C. § 1951(c); in Counts 2 and 4 with Interference with Commerce by Robbery in violation of 18 U.S.C. § 1951(a); in Counts 3 and 5 with Using or Carrying a Firearm during Commission of a Crime of Violence in 18 U.S.C. § 924(c)(1)(A)(ii); in Count 6 with Possession of a Firearm by a Convicted Felon in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2); and in Count 7 of Tampering with Proceedings in violation of 18 U.S.C. § 1512(c)(1).

In the instant Motion, Defendant moves to dismiss Counts 3, 5, and 6. As to Counts 3 and 5, she argues that aiding and abetting Hobbs Act robbery

1

is not a crime of violence under 18 U.S.C. § 924(c). However, Defendant acknowledges that her argument is foreclosed by the Fifth Circuit's decision in *United States v. Hill*.[1] Accordingly, the Motion is denied as to Counts 3 and 5, and the Court will consider her arguments as to Count 6 only.

In Count 6, Defendant is charged with Possession of a Firearm by a Convicted Felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The Government alleges that Defendant was found in possession of a firearm during her arrest the day after the second robbery. In the original indictment, the predicate offenses for Count 6 were a 2007 state law conviction for possession of cocaine and a 2018 state law conviction for possession of methamphetamines. Defendant moved to dismiss Count 6 pursuant to the Supreme Court's decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*, arguing that Count 6 violated the Second Amendment.[2] Specifically, Defendant argued that regulating her possession of a firearm is inconsistent with the Nation's historical tradition of firearm regulation. The Court had oral argument on Defendant's Motion and, without issuing a ruling, expressed its concerns that Count 6 may violate the Second Amendment where the Government had not carried its burden under *United States v. Diaz* to identify a well-established and representative historical analogue for drug possession consistent with the Nation's historical tradition of firearm regulation.[3]

Thereafter, just ten days before trial, the Government—apparently seeking to remedy concerns about Count 6—filed a Superseding Indictment

---

[1] 63 F. 4th 335 (5th Cir. 2023).

[2] 597 U.S. 1 (2022); Doc. 50.

[3] United States v. Diaz, 116 F.4th 458, 467 (5th Cir. 2024).

that amended Count 6 to add a new predicate offense: a 2004 state conviction of simple burglary. Defendant again moved to dismiss that charge, adding new arguments relating to the additional predicate offense. The Court will consider each of Defendant's arguments in turn.

## LEGAL STANDARD

Pursuant to Federal Rule of Criminal Procedure 12(b), a party may challenge an indictment for failing to state an offense. "A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits."[4] In this circuit, "[t]he propriety of granting a motion to dismiss an indictment . . . is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact . . . .  If a question of law is involved, then consideration of the motion is generally proper."[5] A court must take the allegations of the indictment as true and determine whether an offense has been stated.[6] A defendant may not challenge an indictment, sufficient on its face, on the ground that the allegations are not supported by adequate evidence.[7]  A court may, however, apply undisputed facts to resolve a question of law with a trial of the general issue.[8]

---

[4] FED. R. CRIM. PRO. 12.
[5] United States v. Flores, 404 F.3d 320, 324 (5th Cir. 2005).
[6] United States v. Fontenot, 665 F.3d 640, 644 (5th Cir. 2011).
[7] United States v. Mann, 517 F.2d 259, 267 (5th Cir. 1975).
[8] *Flores*, 404 F.3d 320.

## LAW AND ANALYSIS

Defendant seeks dismissal of Count 6, arguing that considering recent United States Supreme Court and Fifth Circuit precedent, 18 U.S.C. § 922(g)(1) is unconstitutional facially and as applied to her. The Court will detail relevant Second Amendment law before turning to Defendant's specific challenges.

### I.    The State of Second Amendment Law

The Second Amendment provides that "[a] well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."[9] In *District of Columbia v. Heller*, the Supreme Court interpreted the language of the Second Amendment clause-by-clause, determining that while "the Second Amendment right is exercised individually and belongs to all Americans" it particularly "elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home."[10] In an effort to clarify that it did not find the right to bear arms "unlimited," the Court provided an oft-cited list of non-exhaustive "presumptively lawful regulatory measures" upon which courts could call in the future.[11] It stated that *Heller* " should not be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill," among others.[12]

---

[9] U.S. Const. amend. II.
[10] 554 U.S. 570, 581, 635 (2008).
[11] *Id.* at 626-27, n.26.
[12] *Id.*

4

In *New York State Rifle & Pistol Association v. Bruen*, the Supreme Court re-visited *Heller*, enunciating a new standard for applying the Second Amendment.[13] It held

> that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."[14]

While the Court stated that "[t]he Second Amendment guaranteed to 'all Americans' the right to bear commonly used arms in public subject to certain reasonable, well-defined restrictions,"[15] some Justices included disclaimers that enduring bans on felons possessing firearms were still in effect.[16]

The Supreme Court recently upheld the constitutionality of 18 U.S.C. § 922(g)(8), a prohibition on possessing a firearm while subject to a domestic violence restraining order in *United States v. Rahimi*.[17] Applying the logic of *Bruen*, the Court concluded that § 922(g)(8) "fits comfortably" in the Nation's

---

[13] 597 U.S. 1 (2022).

[14] *Id.* (quoting *Konigsberg v. State Bar of Cal.,* 366 U.S. 36, 50 n.10 (1961)).

[15] *Id.* at 70 (quoting *Heller*, 554 U.S. at 581).

[16] *Id.* at 81 (Kavanaugh, J., concurring) (Roberts, J. joining) ("[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." (quoting *Heller*, 554 U.S. at 616)); *Id.* at 72 (Alito, J., concurring) ("Nor have we disturbed anything that we said in *Heller* or *MacDonald* or *Chicago* about restrictions that may be imposed on the possession or carrying of guns.").

[17] 602 U.S. 680 (2024).

tradition of "preventing individuals who threaten physical harm to others from misusing firearms."[18]

The Court's decision in *Rahimi* turned on a determination that surety and "going armed" laws at the time of the Founding were proper historical analogues to § 922(g)(8), emphasizing that *Bruen* does not require courts to find a "historical twin" to the modern conduct before them.[19] Surety laws "provided a mechanism for preventing violence before it occurred" by requiring individuals to post bonds when there was a "probable ground to suspect [] future misbehavior."[20] These laws aimed at "prevent[ing] all forms of violence, including spousal abuse" and the misuse of firearms.[21] "So-called 'going armed' laws prohibited 'riding or going armed, with dangerous or unusual weapons, to terrify the good people of the land. Such conduct justified permanent disarmament because it 'disrupted the public order and led almost necessarily to actual violence.'"[22]

In comparing these laws to § 922(g)(8), a majority of the Court found that both laws did not "broadly restrict arms used by the public generally" and were put in place to prevent future harm.[23] Additionally, the Court found that that "if imprisonment was permissible to respond to the use of guns to threaten the physical safety of others, then the lesser restriction of temporary disarmament

---

[18] *Id.* at 690.

[19] *Id.* at 699-700.

[20] *Id.* at 695.

[21] *Id.*

[22] United States v. Wilson, No. CR 22-238, 2024 WL 4436637, at *5 (E.D. La. Oct. 6, 2024) (Long, J.) (quoting *Rahimi*, 602 U.S. at 697).

[23] *Rahimi*, 602 U.S. at 698.

that § 922(g)(8) imposes is also permissible."[24] Taken together, the Court concluded that "[o]ur tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others."[25]

The present case concerns § 922(g)(1), a ban on all firearm possession by anyone that has been convicted of a crime with a term of imprisonment that exceeds one year. The Supreme Court has not directly addressed *Bruen*'s impact on the constitutionality of § 922(g)(1). As such, this Court looks to its the Fifth Circuit's decision in *United States v. Diaz* and its own recent decisions for instruction.[26]

In *Diaz*, applying *Bruen*'s two-part test, the court first determined that Diaz was part of "the people" described in the text of the Second Amendment, regardless of his status as a convicted felon.[27] The court found that *Bruen*'s two-part test could "effectively [be] collapsed into one question: whether the law is consistent with our Nation's history of firearm regulation."[28] The court advised that the government has the burden to "'identify a well-established and representative historical analogue, not a historical twin.'"[29] The court explained that "[i]n assessing similarity," the court should "consider 'whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified.'"[30]

---

[24] *Id.* at 683.
[25] *Id.* at 700.
[26] *Diaz*, 116 F.4th at 467.
[27] *Id.* at 466.
[28] *Id.* at 467 (citing *Rahimi,* 602 U.S. at 692).
[29] *Id.*
[30] *Id.*

The court then evaluated whether § 922(g)(1) as applied to the defendant was consistent with the Nation's tradition of regulating firearm use, considering the defendant's predicate offense of theft.[31] The Fifth Circuit found that several colonial era laws "severely punish[ed] people like Diaz who had been convicted of theft," often with execution.[32] The court stressed that capital punishment laws carry a comparable purpose to § 922(g)(1)'s firearm restriction in that both sought to "deter violence and lawlessness."[33] Finding that punishing those who committed crimes with permanent dispossession of their firearms passed muster under *Bruen*, the Fifth Circuit held that § 922(g)(1) was constitutional on its face and as applied to Diaz.[34]

While the Fifth Circuit concluded that § 922(g)(1) was constitutional on its face and as applied to Diaz, it explicitly did not foreclose the question of whether disarming felons convicted of other offenses fits within the Nation's historical tradition.[35] As such, the Court turns to Defendant's challenges to § 922(g)(1).

### I. Defendant's Arguments

Defendant asserts several constitutional arguments for dismissal of Count 6, which charges her with violating 18 U.S.C. § 922(g)(1): (1) Section 922(g)(1) is unconstitutional as applied to Defendant under the Second Amendment; (2) Section 922(g)(1) is unconstitutional on its face; (3) Section 922(g)(1) is unconstitutionally vague; and (4) Section 922(g)(1) is

---

[31] *Id.*

[32] *Id.* at 468–69.

[33] *Id.* at 469.

[34] *Id.* at 471–72.

[35] *Id.* at 470, n.4.

unconstitutional because it exceeds Congress's power to regulate commerce. In addition, Defendant argues that her predicate convictions are not statutory predicates for § 922(g)(1). The Court will consider each argument in turn.

### A. Unconstitutional as Applied

First, Defendant argues that § 922(g)(1) is unconstitutional as applied to her under the Second Amendment. Under *Bruen*, the Court must first decide if "the Second Amendment's plain text covers" Defendant's conduct.[36] Here, it does. The Fifth Circuit has held that "[t]he plain text of the Second Amendment covers the conduct prohibited by § 922(g)(1)[.]"[37] As such, the Fifth Circuit instructs that:

> The burden thus shifts to the government to demonstrate that regulating [the defendant's] possession of a firearm is "consistent with the Nation's historical tradition of firearm regulation." To satisfy this burden, the government must "identify a well-established and representative historical *analogue*, not a historical *twin*." Evidence must be "relevantly similar" to the challenged law. In assessing similarity, we consider "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified."[38]

Accordingly, the Court considers Defendant's predicate offenses. The predicate offenses alleged in the Superseding Indictment are possession of cocaine, possession of marijuana, and simple burglary. Because the Court finds that simple burglary satisfies the requirements of the Second Amendment to

---

[36] *Bruen*, 597 U.S. at 24.
[37] *Diaz*, 116 F.4th at 467.
[38] *Id.* (internal citations omitted).

provide a predicate offense for Count 6, the Court does not address Defendant's drug possession charges.

Louisiana's simple burglary statute under which Defendant was convicted criminalizes "[t]he unauthorized entering of any dwelling, vehicle, watercraft, or other structure, movable or immovable, or any cemetery, with the intent to commit a felony or any theft therein."[39] Accordingly, the analysis of whether a simple burglary conviction can constitutionally provide the basis for a § 922(g)(1) charge is analogous to the consideration of theft in *Diaz* because burglary under Louisiana law requires unauthorized entry with the intent to commit theft. There, the Fifth Circuit found that several colonial era laws "severely punish[ed] people like Diaz who had been convicted of theft," often with execution.[40] "Permanent disarmament under § 922(g)(1) does not punish such crimes 'to an extent beyond what was done at the founding,' given the government's evidence that crimes such as theft were punished so severely and permanently."[41]

Similarly, in *United States v. Matthews*, another section of this Court recently considered whether a Louisiana conviction of simple robbery could be a predicate offense for § 922(g)(1) and held that "the authorities that *Diaz* relied on to create historical analogues support the constitutionality of predicating disarmament on a Louisiana robbery conviction."[42] It pointed out that Louisiana's robbery statute prohibits theft using force or intimidation.[43]

---

[39] La. Rev. Stat. § 14:65.
[40] *Id.* at 468-69.
[41] *Diaz*, 116 F.4th at 469.
[42] United States v. Jovante Matthews, No. CR 24-114, 2025 WL 105291, at *2 (E.D. La. Jan. 15, 2025).
[43] *Id.*

It noted historical sources requiring estate forfeiture or capital punishment for theft or burglary.[44]    Most notably, the Court relied on a historical law authorizing the death penalty for "robbing any person or persons in his, her, or their dwelling house [with] the dweller in the same house . . . or of robbing any person in or about any highway."[45]

This Court finds this analysis compelling. Louisiana's simple burglary law is sufficiently analogous to the historical laws punishing theft outlined in *Diaz* and *Matthews*. Because those laws punished theft with capital punishment or estate forfeiture, they imposed a comparable burden on Second Amendment rights as those at issue here.

Defendant argues only that Louisiana simple burglary cannot be a constitutional § 922(g)(1) predicate because it is not analogous to common-law burglary as that offense was understood at the Founding, which she contends required breaking and entering another person's home at night with the intent to kill or commit some other felony within. The Supreme Court has advised, however, that "the law must comport with the principles underlying the Second Amendment, but it need not be a "dead ringer" or a "historical twin.""[46] Defendant has not shown why Louisiana's simple burglary law differs such that historical laws punishing theft cannot satisfy the requirements of *Bruen*. Accordingly, the Court holds that the Second Amendment does not preclude the enforcement of § 922(g)(1) against Defendant.

---

[44] *Id.*
[45] *Id.* (citing Act of Feb. 21, 1788, ch. 37, 1788 N.Y. Laws 664–65).
[46] *Rahimi*, 602 U.S. at 692.

### B. Unconstitutionally Vague

Next, Defendant argues that § 922(g)(1) is unconstitutionally vague under the Fifth Amendment. She contends that, since *Bruen*, § 922(g)(1) has been held to be unconstitutional as applied to certain subsets of felons. Defendant argues that under this piecemeal approach, felons do not have fair notice of what conduct is criminal, making the statute unconstitutionally vague.

Other sections of this Court have rejected this argument. As Judge Lance Africk explained:

> [T]his argument misunderstands a vagueness challenge because it challenges a Supreme Court ruling or rulings by other courts as vague instead of the law itself. . . .  Defendants do not cite to any language in the law that creates uncertainty or fails to provide them with fair notice of prohibited conduct. Furthermore, defendants do not provide any support for their contention that Supreme Court precedent can render a clear statute unconstitutionally vague.[47]

A criminal statute survives a vagueness review if it "define[s] the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."[48] A plain reading of the § 922(g)(1) "supports this finding and provides sufficient notice to ordinary people of the conduct that is prohibited."[49]

---

[47] United States v. Conner, No. CR 23-54, 2023 WL 8474735, at *2–3 (E.D. La. Dec. 7, 2023).

[48] United States v. Edwards, 182 F.3d 333, 335 (5th Cir. 1999).

[49] United States of America v. Curtis Squire, No. CR 24-41, 2024 WL 5057201, at *5 (E.D. La. Dec. 10, 2024).

Further, Defendant has not identified any authority holding that §
922(g)(1) is unconstitutional when based on a simple burglary predicate offense
and therefore fails to demonstrate that § 922(g)(1) is vague with regard to her
conduct. Defendant's conduct clearly falls within the conduct prohibited by §
922(g)(1). Accordingly, this argument fails.

### C.  Unconstitutional on its Face

Defendant next argues that § 922(g)(1) is unconstitutional on its face.
In doing so, however, she acknowledges that this argument is foreclosed by the
Fifth Circuit's decision in *Diaz*.[50] Accordingly, this argument fails.

### D. Commerce Clause

Likewise, Defendant argues that § 922(g)(1) is unconstitutional because
it exceeds Congress's authority under the Commerce Clause. She
acknowledges, however, that her argument is presently foreclosed by Fifth
Circuit precedent in *United States v. Seekins*.[51] Accordingly, this argument also
fails.

### E. Statutory Defect

Finally, Defendant argues that her 2004 simple burglary conviction
cannot be a predicate offense for Count 6 because her rights as to that
conviction have been restored.[52] Section 922(g)(1) prohibits any person "who

---

[50] *Diaz*, 116 F.4th at 469.
[51] 2022 WL 3644185, at *2 (5th Cir. Aug. 24, 2022).
[52] Defendant also makes this argument as to her 2007 conviction for possession of
cocaine. Because this Court did not consider the constitutionality of using that conviction as
a predicate offense, it need not consider it here. However, the same analysis would apply.

13

has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year" to possess a firearm. Section 921(a)(20), however, provides that:

> What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

Defendant argues that, pursuant to Louisiana law, by October 2016 her rights had been fully restored from her 2004 conviction and she could lawfully possess a firearm. She therefore argues that her 2004 simple burglary conviction is not a valid statutory predicate for a § 922(g)(1) prosecution based on a March 2022 firearm possession. The Government responds that because Defendant is precluded under Louisiana law from obtaining a concealed handgun permit, the "unless clause" of § 921(a)(20) is triggered and her burglary conviction is a valid predicate offense under § 922(g)(1).

In *United States v. Dupaquier*, the Fifth Circuit provided a test to determine whether a convicted felon's rights have been "restored" under section 921(a)(20):[53]

> We first ask whether "the state which obtained the underlying conviction revives essentially all civil rights of convicted felons, whether affirmatively with individualized certification or passively with automatic reinstatement...." If so, we "then determine whether the defendant was nevertheless expressly

---

[53] United States v. Dupaquier, 74 F.3d 615, 617 (5th Cir. 1996).

deprived of the right to possess a firearm by some provision of the restoration law or procedure of the state of the underlying conviction."[54]

Pursuant to Article I, § 20, of the Louisiana Constitution, "[f]ull rights of citizenship shall be restored upon termination of state and federal supervision following conviction for any offense." Accordingly, the Fifth Circuit held in *Dupaquier* that in Louisiana, essentially all of "[a] felon's rights are restored by operation of the Louisiana Constitution 'upon termination of state and federal supervision.'"[55]

The court then considered the second question and noted that under Louisiana Revised Statutes § 14:95.1, it is unlawful for a convicted felon to possess a firearm until ten years after the date of completion of his sentence.[56] The court held therefore that Dupaquier's possession of a firearm became lawful after July 14, 1990, and he was not deprived of his right to possess a firearm after that time.[57] It concluded that:

> As we have found that the Louisiana Constitution restored essentially all of Dupaqier's civil rights upon completion of his sentence on July 14, 1980, and the statutory restriction on his right to possess firearms terminated on July 14, 1990, we hold that Dupaquier was not a convicted felon within the meaning of sections 921(a)(20) and 922(g)(1) at the time of the alleged conduct on August 8, 1990.[58]

Subsequent to *Dupaquier*, however, the Supreme Court decided *Caron v. United States* in which it considered the "unless such pardon, expungement,

---

[54] *Id.* (internal citations omitted).
[55] *Id.*
[56] *Id.*
[57] *Id.*
[58] *Id.* at 618.

or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms" clause of § 921(a)(20).[59] The Supreme Court held that the clause must be interpreted under an "all-or-nothing" approach, and therefore, any limitation on a felon's possession of a firearm triggers the "unless clause."[60] The Court reasoned that the "Federal Government has an interest in a single, national, protective policy, broader than required by state law."[61] There, because the state of Massachusetts allowed felons to possess rifles or shotguns but forbade them to possess handguns outside their home or business, the "unless clause" was triggered and the defendant's prior conviction satisfied the requirements § 922(g)(1). "In sum, Massachusetts treats petitioner as too dangerous to trust with handguns, though it accords this right to law-abiding citizens. Federal law uses this state finding of dangerousness in forbidding petitioner to have any guns."[62]

Since *Caron*, the Fifth Circuit has continued to use the *Dupaquier* two-part test and applied *Caron* in its second step.[63] The Government argues that under *Caron* the "unless clause" is triggered here by Louisiana's restrictions on felons obtaining concealed carry permits. Louisiana Revised Statutes § 40:1379.3 provides that individuals that have been convicted of felonies are ineligible to obtain concealed carry permits unless they have (1) received a governor's pardon or (b) ten years has elapsed and the conviction has been expunged. The Government argues that this restriction on the right to possess

---

[59] Caron v. United States, 524 U.S. 308, 316 (1998).
[60] *Id.*
[61] *Id.*
[62] *Id.*
[63] *See* United States v. Kyllonen, 774 F. App'x 212, 213–14 (5th Cir. 2019).

a firearm under Louisiana law triggers the "unless clause" and allows Defendant's 2004 simple burglary conviction to serve as a predicate offense under § 922(g)(1).

Although the Fifth Circuit has not yet considered the question before this Court,[64] in an unpublished, per curiam decision, *United States v. Kyllonen*, it considered the effect of Michigan's concealed carry permit law on § 921(a)(20)'s "unless clause."[65] The court held that under *Caron*, "any residual limitation on the offender's right to possess a firearm—however small—is enough to activate § 921(a)(20)'s 'unless' clause and preclude the offender from taking advantage of the statutory exception."[66] It held, therefore, that Michigan's law allowing the issuance of a concealed carry permit only to applicants who had "never been convicted of a felony in this state or elsewhere" imposed a "residual limitation" on the defendant's ability to exercise his Second Amendment rights and the "unless clause" was triggered.[67]

Other district courts have considered the effect of Louisiana's concealed carry law on the "unless clause" after *Caron*. Each court considering the issue has concluded that the restrictions on a felon's right to obtain a concealed carry permit under Louisiana Revised Statutes § 40:1379.3 are sufficient to trigger

---

[64] "Neither the Supreme Court nor the Fifth Circuit has reached the precise issue whether Louisiana state law excluding persons from eligibility for a concealed handgun license because of their criminal history is a restriction sufficient to trigger the 'unless clause.'" United States v. Harris, No. 1:17-CR-71-TH, 2018 WL 6498715, at *6 (E.D. Tex. Dec. 11, 2018).

[65] *Kyllonen*, 774 F. App'x at 213–14.

[66] *Id.*

[67] *Id.*

the "unless clause" of § 921(a)(20) under the *Caron* analysis.[68] The district court in *United States v. Braun* discussed existing precedent at length and ultimately held that current Supreme Court and Fifth Circuit jurisprudence mandates this result.[69] This Court agrees. "Without a concealed handgun permit, [Defendant] is limited in the way [s]he can possess and transport handguns vis-a-vis Louisiana residents lacking h[er] criminal record who are eligible for permits"[70] Louisiana's law preventing felons from obtaining concealed carry permits is the sort of "residual limitation on the offender's right to possess a firearm—however small" that the Supreme Court and Fifth Circuit

---

[68] *See* United States v. Sam, No. CR 6:15-00254, 2016 WL 1600229, at *5 (W.D. La. Mar. 23, 2016), report and recommendation adopted, No. CR 6:15-00254, 2016 WL 1573002 (W.D. La. Apr. 18, 2016) ("[B]ecause Sam does not have the same freedom to transport and possess a firearm as a Louisiana citizen without an aggravated battery conviction, under the 'all or nothing' approach adopted in Caron, this restriction is sufficient to trigger the 'unless clause.'"); United States v. Braun, 453 F. Supp. 3d 883, 894 (M.D. La. 2020) (discussing precedent and holding that it forecloses the defendant's argument); United States v. Viola, No. 6:15CR00253-01, 2016 WL 3040695, at *3 (W.D. La. May 24, 2016) (holding that the defendant is prohibited under Louisiana law "from both possessing and transporting a firearm in the same manner as those who do not have a felony conviction. . . . *Caron*, is sufficient to trigger the federal ban contained in the 'possess' and 'transport' elements of the 'unless clause' of § 920(a)(20).'"); *Harris*, 2018 WL 6498715, at *9 (holding that Louisiana "has singled out persons like Mr. Harris with unexpunged felonies as more dangerous than law-abiding citizens, and federal law uses this determination to impose restrictions on his possession of firearms and ammunition under federal law. The 1997 State conviction 'counts' for the purpose of excluding him from eligibility for a concealed handgun permit, and under Caron's all-or-nothing interpretation of the § 921(a)(20) 'unless clause,' the conviction therefore constitutes an appropriate predicate offense for § 922(g) charges under federal law."); Axton v. United States Dep't of Just., No. CV 16-5419, 2016 WL 4496765, at *3 (E.D. La. Aug. 26, 2016) ("Because Axton is prohibited under Louisiana law from obtaining a concealed-carry permit due to his prior felony conviction, Axton is unable to possess any firearms pursuant to the "unless clause" of Section 921(a)(20), despite Axton having been pardoned. The all-or-nothing approach defined by the Supreme Court in *Caron* effectively mandates this conclusion.).

[69] 453 F. Supp. 3d at 897.

[70] *Harris*, 2018 WL 6498715, at *9.

18

have deemed sufficient "to activate § 921(a)(20)'s 'unless' clause and preclude the offender from taking advantage of the statutory exception."[71] Accordingly, the "unless clause" is triggered here, and Defendant's 2004 burglary conviction can serve as a statutory predicate offense for Count 6. Defendant's argument fails.

### **CONCLUSION**

For the foregoing reasons, Defendant's Motion is **DENIED**.

New Orleans, Louisiana this 28th day of January, 2025.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

[71] *Kyllonen*, 774 F. App'x at 213–14.

19