UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO: 23-131 |
| DEBORAH COOPER | SECTION: "H"(2) |

ORDER AND REASONS

Before the Court is the Government's Motion to Exclude Defendant's Expert (Doc. 122). For the following reasons, the Motion is **GRANTED**.

BACKGROUND

Defendant Deborah Cooper was indicted on six charges stemming from two armed robberies of Igor's Bar in New Orleans, Louisiana in February and March 2022, respectively. She is charged in Count 1 with Conspiracy to Interfere with Commerce by Robbery in violation of 18 U.S.C. § 1951(c); in Counts 2 and 4 with Interference with Commerce by Robbery in violation of 18 U.S.C. § 1951(a); in Counts 3 and 5 with Using or Carrying a Firearm during Commission of a Crime of Violence in 18 U.S.C. § 924(c)(1)(A)(ii); in Count 6 with Possession of a Firearm by a Convicted Felon in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2); and in Count 7 of Tampering with Proceedings in

1

violation of 18 U.S.C. § 1512(c)(1). Trial of this matter began on February 3, 2025.

On January 17, 2025, Defendant filed a Motion in Limine to exclude certain categories of evidence.[1] Relevant here, Defendant asked the Court to prevent law enforcement witnesses from offering lay opinions regarding their identification of Defendant. Specifically, Defendant sought to prevent law enforcement from offering an opinion as to whether Defendant is one of the two people depicted in a surveillance video that captured the two alleged robbers. On January 28, 2025, the Court denied Defendant's request, holding that "an officer's testimony identifying a suspect in a surveillance video, when given in the context of explaining the basis of the investigation and how he developed the defendant as a suspect, can be helpful to the jury."[2] On January 30, 2025, Defendant filed a motion asking the Court to reconsider this holding.[3] The Court denied that request at a telephone status conference held the next day.[4]

Thereafter, Defendant noticed pursuant to Rule 16 her intention to call Dr. Margaret Kovera to offer opinions in the field of the reliability of identifications.[5] Defendant's notice was provided on February 2, 2025—the Sunday before trial was scheduled to begin on February 3, 2025. In addition, Defendant informed the Court that Dr. Kovera was not available to testify in person and requested her testimony be held by two-way video. Trial began on February 3, and the Government orally expressed its objection to Defendant's

---

[1] Doc. 89.
[2] Doc. 107 (citing United States v. Weldon, No. 21-30474, 2022 WL 4363831 (5th Cir. 2022)).
[3] Doc. 110.
[4] Doc. 120.
[5] Doc. 119.

2

untimely expert disclosure. The Court heard argument from both parties on the issue. After the first day of trial, the Government filed the instant Motion to Exclude Defendant's expert, memorializing its objections in writing.

## **LEGAL STANDARD**

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

The current version of Rule 702 reflects the Supreme Court's decisions in *Daubert v. Merrell Dow Pharms., Inc.*,[6] and *Kumho Tire Co. v. Carmichael*.[7] The threshold inquiry is whether the expert possesses the requisite qualifications to render an opinion on a particular subject matter.[8] Having defined the permissible scope of the expert's testimony, a court next inquires whether the opinions are reliable and relevant.[9] In undertaking this tripartite analysis, courts must give proper deference to the traditional adversary system

---

[6] 509 U.S. 579 (1993).
[7] 526 U.S. 137 (1999).
[8] Wagoner v. Exxon Mobil Corp., 813 F. Supp. 2d 771, 799 (E.D. La. 2011); *see also* Wilson v. Woods, 163 F.3d 935, 937 (5th Cir. 1999) ("A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject.").
[9] *See* United States v. Valencia, 600 F.3d 389, 424 (5th Cir. 2010).

and the role of the jury within that system.[10] "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[11] As the "gatekeeper" of expert testimony, the trial court enjoys broad discretion in determining admissibility.[12]

## LAW AND ANALYSIS

While the Government does not argue that Dr. Kovera is not qualified, it moves to exclude her for two reasons: (1) Defendant's Rule 16 notice was insufficient and untimely; and (2) Dr. Kovera's opinions lack scientific validity and do not concern matters beyond the understanding of the average lay person. The Court finds both reasons compelling.

### A. Untimely and Insufficient Rule 16 Notice

Federal Rule of Criminal Procedure 16 requires that a defendant's expert disclosure contain: "a complete statement of all opinions that the defendant will elicit from the witness in the defendant's case-in-chief; the bases and reasons for them; the witness's qualifications, including a list of all publications authored in the previous 10 years; and a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition." Defendant's notice is devoid of any explanation or basis for Dr. Kovera's opinions, and therefore fails to comply with Rule 16.

---

[10] *See Daubert*, 509 U.S. at 596.
[11] *Id.*
[12] Wellogix, Inc. v. Accenture, L.L.P., 716 F.3d 867, 881 (5th Cir. 2013).

Further, expert disclosures were due December 27, 2024.[13] Defendant's notice on the eve of trial was untimely under this Court's scheduling order and did not provide the Government with sufficient time to prepare and respond. The Fifth Circuit has advised that in determining whether to impose discovery sanctions, a district court should consider "1) the reasons why disclosure was not made; 2) the amount of prejudice to the opposing party; 3) the feasibility of curing such prejudice with a continuance of the trial; and 4) any other relevant circumstances."[14] During argument on the issue, Defendant's counsel claimed that she did not become aware of the need for an expert on this issue until the Court denied her Motion for Reconsideration on the Friday preceding trial. This Court finds this explanation dubious. Despite missing the deadline, Defendant surely knew as early as January 17, 2025 when she filed the relevant Motion in Limine that law enforcement may offer lay opinion testimony regarding Defendant's identity in surveillance videos. The fact that Defendant apparently thought the Court would sustain her objection to that testimony is insufficient grounds for her delay in seeking and noticing an expert. Further, Defendant did not request a continuance to alleviate the prejudice on the Government until the morning of trial while potential jurors were assembling in the courthouse. While the Court is aware "that where a party did not act with an improper motive, it is rare to sanction a party in a method as draconian as suppressing the evidence," Defendant's unjustified delay, the considerable prejudice to the Government, and the fact that trial had already begun weigh toward excluding Dr. Kovera.[15]

---

[13] Doc. 64.
[14] United States v. Michalik, 5 F.4th 583, 591 (5th Cir. 2021).
[15] *Id.* (internal quotations omitted).

## B. Unhelpful Opinions

That said, the Court also finds that Dr. Kovera's opinions are unhelpful to the trier of fact. Dr. Kovera purports to offer the following opinions:

> 1) When an individual's face is partially occluded, people are more likely to make mistaken identifications, even when the individual is highly recognizable when the entire face can be seen.
>
> 2) Law enforcement officers do not necessarily make more reliable identifications or person-matching comparisons than lay people do.
>
> 3) People engage in confirmatory hypothesis testing, also known as confirmation bias. When testing a hypothesis, they tend to search for information that confirms their prediction and ignore information that disconfirms it.
>
> 4) To increase the validity of person-matching comparisons, not only should a witness look for "confirmatory features" but also disconfirmation information, i.e., differences from the individual and the person depicted in surveillance footage.
>
> 5) Once a person commits to an identification, they are likely to continue to identify the same person, even when that identification is incorrect.[16]

Setting aside the lack of bases for these opinions and the resulting difficulty in assessing their reliability, the Court finds that Dr. Kovera's proposed opinions are "well within the common sense understanding of jurors and require[] no expert testimony."[17] "'[J]urors using common sense and their faculties of observation can judge the credibility of an eyewitness identification, especially since deficiencies or inconsistencies in an eyewitness's

---

[16] Doc. 119.
[17] Vogler v. Blackmore, 352 F.3d 150, 155 (5th Cir. 2003).

testimony can be brought out with skillful cross-examination.'"[18] To be clear, the Government does not intend to offer true eye witness testimony, but rather lay opinion testimony regarding identification from surveillance footage. Here, the jury will have the opportunity to view the exact same footage as law enforcement witnesses to assess the accuracy and credibility of the officers' lay opinions.

Further, each of Dr. Kovera's opinions can be addressed on cross-examination of the Government's witnesses. As the Government explains:

> [T]he defendant can aptly cross-examine any of the witnesses, including Detective Bencik, on issues such as the difficulties of identifying people who are wearing masks; that law enforcement officers are no more reliable at making identification than lay people—like the jurors who will see the video surveillance themselves; about confirmation bias; that when attempting to identify a person, maybe one should look for differences from the individual to the person in the video surveillance; and that once an identification is made, it is likely that the person will continue to make such an identification.[19]

---

[18] United States v. Tindall, No. H-09-251, 2010 WL 723752, at *1 (S.D. Tex. Feb. 25, 2010), aff'd, 449 F. App'x 377 (5th Cir. 2011) (quoting United States v. Harris, 995 F.2d 532, 535 (4th Cir. 1993)); see also United States v. Angleton, 269 F. Supp. 2d 868, 875 (S.D. Tex. 2003) ("The proposition that an earwitness's preexisting belief as to the identity of the speaker affects the reliability of the earwitness identification is intuitive. It falls within the common sense of an average juror. It is a point that can readily be elicited on cross-examination to challenge the credibility of the earwitness identification."). This Court notes that this case does not involve true eyewitness testimony, but rather identification and development of a suspect through surveillance video by law enforcement. Still, jurors can use their common sense and observations to weigh that identification against the deficiencies and biases pointed out by Defendant on cross-examination.

[19] Doc. 122.

Courts have held that an expert should "bring to the jury more than the lawyers can offer in argument."[20] Dr. Kovera does not, and her testimony is therefore not helpful to the trier of fact.

## CONCLUSION

For the foregoing reasons, the Government's Motion to Exclude Defendant's Expert is **GRANTED**.

New Orleans, Louisiana this 4th day of February, 2025.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

[20] Salas v. Carpenter, 980 F.2d 299, 305 (5th Cir. 1992).